**McLAUGHLIN, Collector of Internal Revenue, v. COOS BAY LUMBER CO.**

No. 7832.

Circuit Court of Appeals, Ninth Circuit.

Dec. 16, 1935.

H. H. McPike, U. S. Atty., of San Francisco, Cal., and Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Andrew D. Sharpe, E. F. McMahon, and Berryman Green, Sp. Assts. to the Atty. Gen., for petitioner.

Lyman Henry, of San Francisco, Cal., for respondent.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

From a judgment rendered in favor of plaintiff in an action brought to recover stamp taxes alleged to have been erroneously paid, the collector has appealed. The action was tried by the court, after a written waiver of the jury was filed, on a stipulation of the facts.

It appears from the stipulation of facts that appellee is a Delaware corporation, which until February 15, 1928, when its name was changed to the present one, was named Pacific States Lumber Company. On September 18, 1925, plaintiff had issued and outstanding first mortgage bonds in the principal "amount of upwards of" $7,000,-000, and on that date plaintiff was in default in the payment of principal and interest thereon. A bondholders' protective committee was organized, and under an agreement dated September 18, 1925, between the committee and the bondholders, bonds were deposited with the committee.

This agreement provided for the deposit of the bonds with the committee, and among other things provided:

"The title to all of said bonds is, for the period hereinafter named, vested in the Committee to hold the same for the purposes herein set forth and to have and exercise, with respect thereto, all rights and powers of every kind and description given by law or by the terms of the Bonds or in any instrument securing the same, which the Depositors might thus have had or exercised in respect to the Bonds so deposited or the property upon which the same are secured.

"The Committee shall have power and authority, if and when in its judgment it becomes advisable so to do, but not otherwise, to propose or adopt a plan and agreement of reorganization.  *  *  *"

The agreement also provided that, upon approval or adoption of a plan of reorganization, notice was to be published, and a copy of the plan was to be mailed to each of the depositors; and further provided, that "any depositor may within twenty (20) days from the date of the first publication of such notice, withdraw herefrom" on certain conditions therein specified. The powers given by this agreement were very broad, giving to the members of the committee the right to institute action, if in the judgment of the committee such action was necessary. Once a bondholder had deposited his bonds, he relinquished all control over them except in the event of an amendment of the agreement, when, within 20 days after notice of the amendment, he might withdraw his bonds; except also the right to withdraw upon publication of a plan of reorganization; except also the right for a majority of the bondholders to withdraw at any time; and excepting also the right to share in the proceeds of any payments made on account of principal and interest as provided in the agreement.

On April 18, 1927, the committee adopted a plan of reorganization, to which appellee agreed in the month of September following, and the reorganization was completed thereafter. The proposed plan was that for each $100 of principal of the outstanding bonds, there was to be issued one share of $100 par first preferred stock, and one share of no par value common stock; and there was to be issued to the stockholders who held the stock of plaintiff as it existed prior to the reorganization, and which we call the old stock, $1,000,000 of second preferred stock. The plan provided that the old stock of plaintiff, received by it in the exchange, was then to be canceled. The first preferred stock and the common stock by the terms of said plan "shall be held and voted by a committee of five Voting Trustees, for the benefit of the owners thereof."

The stock trust agreement was in part as follows:

"This agreement, made this twenty-third day of February, 1928, by and between G. S. Arnold, C. T. Mac Neille, N. V. Wagner, A. McC. Washburn, and Homer W.

Bunker, constituting the Pacific States Lumber Company Bondholders' Protective Committee and the Managers of the Plan of Reorganization of said company and hereinafter called the 'Committee,' parties of the first part, and G. S. Arnold, C. T. Mac Neille, N. V. Wagner, A. McC. Washburn, and Homer W. Bunker, hereinafter called the 'Trustees,' parties of the second part,

"Witnesseth:

"Whereas, the Committee has caused to be delivered to said trustees, certificates representing 63,757 shares of the first preferred stock and an equal number of shares of no par value common stock of Coos Bay Lumber Company (formerly Pacific States Lumber Company) to be held by said trustees for and on behalf of the beneficial owners thereof as designated by the Committee."

Upon the issue of the stock there was affixed to the certificate stubs, revenue stamps as follows: For issue of 63,757 shares of $100 par first preferred $3,187.-85; for issue of 63,757 shares of no par common $1,275.14; for issue of 10,000 shares of $100 par second preferred $500.

Thereafter, appellee made a claim for the redemption of the stamps used on account of the issue of the no par common for the reason that this stock had no actual value at the time of issue, and also made a claim for redemption of the stamps used on account of the issue of the second preferred stock on the ground that such stock was used in exchange for outstanding certificates, and the issue did not involve an increase in the capital of the corporation.

In a letter dated March 3, 1930, the Commissioner allowed both of these claims in the sum of $1,775.13, but said:

" * * * It is disclosed, however, that the 10,000 shares of second preferred stock were not issued to the stockholders but to certain trustees, and that the 63,757 shares of first preferred and 63,757 shares of common stock, which ,were issued through an agreement with bondholders, were not issued to such bondholders, but to trustees.

"The rights of the stockholders and the bondholders to receive these shares of stock were, therefore, transferred, and such transfer is subject to tax under Schedule A-3 of the Revenue Act of. 1926. The tax on the transfer of such rights amounts to $2,750.28. Deducting from this the over-

payment of $1,775.13 on the issue tax, a stamp tax of $975.15 is still due."

Thereafter, plaintiff paid this deficiency, with interest, amounting to a total of $1,-039.91, and seeks by this action to recover the $2,750.28 and $64.76 interest so paid, less the $200 payment made on account of the transfer of the second preferred stock.

The Revenue Act 1926, § 800 et seq., Schedule A, subd. 3, 44 Stat. 101 imposes a tax "on all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock * * * or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not."

The propriety of the tax on the original issue of the new stock to the trustee is not in question; but the sole issue is whether or not the bondholders have made a transfer of "rights * * * to receive such shares * * * made * * * by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in· any manner to the benefit of such stock, interests, or rights, or not * * *"

In Raybestos-Manhattan, Inc. v. United States, 56 S.Ct. 63, 64, 80 L.Ed. —— (Decided November 11, 1935), a case discussing transfer of rights to receive stock, it is said by the Supreme Court of the United States:

"Two of the corporations conveyed their property to petitioner in return for a specified number of its shares of capital stock, issued not to the two corporations, but directly to their stockholders in proportion to their holdings. * * *

"The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder or to receive any certificate of any interest in its property is surrendered by one and vested in another. See Provost v. United States, 269 U.S. 443, 458, 459, 46 S.Ct. 152, 70 L.Ed. 352. While the statute speaks of transfers, it does not require that the transfer shall be directly from the hand

of the transferor to that of the transferee. It is enough if the right or interest transferred is, by any form of procedure, relinquished by one and vested in another. Even the ownership of a share of stock, transfer of which is admittedly taxed, is not transferred directly from one to another as is title to a chattel or to real estate. Transfer of title to the shares is effected by a form of novation by which the right of the shareholder is surrendered to the corporation in return for its recognition of a new shareholder designated by the transferor and the issue to him of a new certificate of stock. It is relinquishment of the ownership for the benefit of another, and the resultant acquisition of it by him which calls the statute into operation.

"The subject of the tax is not alone the transfer of ownership in shares of stock. It embraces transfers of rights to subscribe for or receive shares or certificates. * * * In the present case the generating source of the right to receive the newly issued shares of petitioner was the conveyance to it of the property of each of the corporations to be consolidated. The new shares could not lawfully be issued to any other than the grantor corporation without its authority, and that authority could not be exercised for the benefit of third persons other than its own assenting stockholders."

In the instant case, we think the controlling factor is the determination of the time when the right to receive the stock came into existence. When the bondholders deposited their bonds, they conveyed to the members of the committee the legal title; upon approval by the committee of the plan for reorganization and when the time within which a bondholder could withdraw his bonds had expired (except possibly the right of a majority), no one had a right to receive the stock until the plan was approved by appellee. When the plan was approved by appellee, a right to receive stock was vested in the owners of the title to the bonds who would be and were the members of the committee. And since the right to receive the stock was not vested in the bondholders, they could not transfer such right.

The Commissioner's main contention is shown by the following quotation from his brief: "The only inference of fact or conclusion of law that may be fairly drawn from such evidence is that the trustees obtained the right to receive legal title to and the shares of stock issued from the bondholders who paid the consideration therefor by assignment in blank and delivery of their bonds, or that the bondholders, by execution of certain agreements and plan of reorganization, thereby transferred to their trustees, or nominees, legal title to, or their respective rights to subscribe for, or to receive legal title to, and the actual shares of stock issued by appellee direct to such trustees in consideration for the bonds of such bondholders. * * * "

The fallacy in this argument, we think, is that the bondholders at no time had a right to receive the stock, for they had effectually disposed of the legal title to the bonds, and it was only the members of the committee, as such owners of such legal title, who had the right to receive the stock.

The Commissioner also contends that there is no ultimate finding of fact to support the judgment, because the stipulated facts are only evidentiary facts; that the ultimate fact, of which there is no finding, is that there was no transfer by the bondholders of a right to receive the stock in question. There was no request by either appellee or appellant for special findings of fact. On November 22, 1934, the trial court entered a minute order that judgment be entered in favor of plaintiff, and also said: "Further the case having been submitted on stipulated facts, no findings of fact or conclusions of law are necessary."

We are unable to discern from this statement whether or not the trial court considered the stipulated facts as special findings. Assuming, without deciding, the truth of appellant's contention that there were no special findings, nevertheless, appellant's contention is without merit because the minute order and judgment certainly constitute a general finding and this is sufficient. 28 U.S.C.A. § 773.

Affirmed.