WELCH, Collector of Internal Revenue, v.
KERCKHOFF.

No. 8013.

Circuit Court of Appeals, Ninth Circuit.

June 8, 1936.

Robert H. Jackson, Asst. Gen. Counsel, of Washington, D. C., Sewall Key, John MacC. Hudson, and E. F. McMahon, Sp. Assts. to the Atty. Gen., and Peirson M. Hall, U. S. Atty., E. H. Mitchell, Sp. Asst. to U. S. Atty., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for appellant.

Todd W. Johnson and Philip D. Johnston, both of Los Angeles, Cal., for appellee.

Before WILBUR, MATHEWS, and HANEY, Circuit Judges.

HANEY, Circuit Judge.

Appellee recovered judgment against appellant for the amount alleged to be illegally collected for documentary stamps which were affixed to certain stock certificates issued to appellee.

The facts were stipulated. Appellee's husband died on February 23, 1929, leaving a will, by the terms of which appellee was named as residuary legatee. The stock certificates received by appellee may be segregated into three groups, all of which were in the possession of the executors of decedent's will, immediately prior to the time of their distribution to appellee, which took place about September 25, 1930.

The first group of certificates represented stock in Wm. G. Kerckhoff Company, hereinafter called the first corporation. Decedent was designated as the owner of such stock in the certificates at the time of his death. Some time prior to September 17, 1930, these certificates were surrendered to the corporation, canceled, and new certificates for the same total number of shares were issued, which certificates designated the executors as the owner of the stock represented by the certificates. On September 17, 1930, an order was made in the probate proceedings of decedent's estate, ordering distribution of the stock of the first corporation to appellee. When the stock was distributed to appellee, she expended $700 for documentary stamps, which were affixed to the certificates received by her and canceled. It does not appear whether or not any tax was paid at the time these certificates were surrendered and reissued to the executors.

The stock received by appellee comprising the second group of certificates mentioned came into the possession of the executors in a different manner. At the time of decedent's death, the first corporation owned all the stock of Wabash Securities Company, hereinafter called the second corporation. Said second corporation owned certain other stocks which we will call "market stocks." Some time prior to the date of the order of distribution, the first corporation distributed all the stock which it owned in the second corporation to the executors. It does not appear whether or not the certificates for stock in the second corporation received by the executors were surrendered and reissued in the names of the executors; nor does it appear that any tax was paid on the transaction. It likewise does not appear how the distribution of the stock of the second corporation was made by the first corporation; that is, whether it was made as an ordinary or a liquidating dividend, or in some other manner.

After the distribution to the executors of the stock of the second corporation, it was dissolved and its assets, including the market stocks mentioned, were distributed in the "hands and names" of the executors. Although it does not appear that the distribution of the market stocks was a liquidating dividend, presumably such was the fact. The record does not disclose whether or not any tax was paid on the distribution of the market stocks to the executors.

The order of distribution, above mentioned, also included these market stocks, and thereafter the certificates representing such stocks were by the executors duly indorsed and distributed to appellee. At the time of this distribution to appellee, she expended money (the amount of which does

not appear) for documentary stamps which were affixed to the certificates for the market stocks and were canceled.

Possession by the executors of the third group of certificates mentioned was obtained in a manner somewhat similar to the manner in which the executors obtained possession of the second group of certificates. At-the time of his death, decedent owned all of the issued and outstanding stock of Terre Haute Corporation, hereinafter called the third corporation. Said third corporation owned all the issued and outstanding stock of San Marino Limited, hereinafter called the fourth corporation. Said fourth corporation owned certain other stocks which we will refer to as "distributed stocks."

On July 17, 1930, the third corporation was dissolved, and the stock of the fourth corporation owned by the third corporation was distributed to the executors. Presumably this distribution was a liquidating dividend, although such fact does not appear in the record. On September 3, 1930, the fourth corporation was dissolved, and its assets, including the distributed stocks mentioned, were distributed in the "hands and names" of the executors, presumably as a liquidating dividend, such fact not being shown in the record.

The record does not disclose whether or not the certificates, for the stock of the third corporation owned by decedent at the time of his death, were surrendered and reissued in the names of the executors, and, if so, whether or not any tax was paid on the transaction. It likewise does not appear whether or not the certificates, for stock of the fourth corporation received by the executors on dissolution of the third corporation, were surrendered and reissued in the names of the executors, and, if so, whether or not any tax was paid on the transaction.

The above-mentioned order of distribution also ordered distribution of the "distributed stocks," and pursuant thereto the executors duly indorsed and distributed such stocks to appellee. At the time of this distribution to appellee she expended a certain sum of money (the amount not being stated in the record) for documentary stamps which were affixed to the certificates for said "distributed stocks" and duly canceled.

The total cost of the stamps affixed to the certificates in the second and third groups of securities was $716.24, and the total cost of the stamps affixed to the certificates in all three groups was $1,416.24.

The trial court held that "title to the property evidenced by the certificates of stock upon which stamps were affixed was transferred and passed to the plaintiff [appellee] by operation of law upon the death of her husband," and rendered judgment in favor of appellee for the full amount expended for stamps.

The Revenue Act of 1926 imposes a tax (chapter 27, 44 Stat. 101, § 800 et seq., Schedule A, subd. 3) "on all sales * * * deliveries of, or transfers of legal title to shares or certificates of stock * * * or to rights * * * to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not."

Article 34 of Treasury Regulations 71, promulgated under the above act, provides among other things:

"The following transactions are subject to the tax:

"(c) The transfer of stock to or by trustees * * *

"(m) The transfer of stock in pursuance of a gift, bequest, or conveyance by trustees.

"(n) The transfer of stock from parties occupying fiduciary relations to those for whom they hold stock.

"(o) The transfer of certificates of stock by an administrator or executor to the legatee or distributee. * * *"

Article 35 of said regulations provides among other things:

"The following transactions are not subject to the tax:

"(g) The transfer of certificates of stock from the decedent to the administrator or executor of the estate * * *

"(q) Transfers of shares or certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as transfer of stock from the decedent to executor. * * *"

Appellee contends that under the law of California the real and personal property

of the decedent pass immediately upon his death to his heirs or to the beneficiaries named in the will;[1] that a legatee may be designated by the will, but it is only by virtue of the statute, that is, by operation of law, that the legatee acquires title;[2] that therefore the transfers fall within article 35 (q) of the regulations quoted, and are not taxable.

Both parties have presented arguments with respect to the question as to whether local law, which purports to control or limit the operation of a federal taxing act, must be applied. In Burnet v. Harmel, 287 U. S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed 199, the rule regarding this question is stated to be that "state law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law."

Thus local law was held to be implied for the determination of what is a building and loan association, because the statute referred to such associations as "domestic" associations, meaning "associations sanctioned by the several States." United States v. Cambridge Loan & Bldg. Co., 278 U. S. 55, 49 S.Ct. 39, 40, 73 L.Ed. 180. And in Crooks v. Harrelson, 282 U.S. 55, 51 S. Ct. 49, 75 L.Ed. 156, the federal taxing statute required property of a decedent which was subject to the payment of expenses of administration to be included in the gross value of the estate for estate tax purposes, and local law was applied to determine whether or not the property in question was subject to such payment. And, where it is necessary to determine the extent of one's ownership in property, under a taxing act which made no determination thereof, local law has been applied to determine the extent of such ownership. Tyler v. United States, 281 U.S. 497, 50 S.Ct. 356, 74 L. Ed. 991, 69 A.L.R. 758; Poe v. Seaborn,[3] 282 U.S. 101, 51 S.Ct. 58, 75 L.Ed. 239.

On the other hand, four cases have been cited wherein local law was not applied.

In United States v. Childs, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299, where a claim including interest thereon, but not including a penalty, might be filed against a bankrupt's estate, and the claim presented arose by virtue of a taxing act which prescribed a rate of interest, which under the local law would be considered as at least partially penal, it was held that, notwithstanding such local law, the claim properly included the interest prescribed by the taxing act, for the "federal statute is precise." In Burk-Waggoner Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183, a joint-stock association was properly taxed as a corporation, even though the local law considered such associations as partnerships.

In Weiss v. Weiner, 279 U.S. 333, 49 S. Ct. 337, 73 L.Ed. 720, the taxing act permitted a deduction for obsolescence actually suffered as a present loss. The taxpayer claimed a deduction for obsolescence of buildings held by him under long-term leases, which under the local law were treated in many respects as conveyances of the fee, and claimed that, being the owner, he was entitled to such deduction because the loss was a present one. It was held that the deduction could not be claimed, because the loss might never fall on the taxpayer, since he might, as he had done with other leases, either assign or surrender the same to the lessors.

In Burnet v. Harmel, supra, the taxpayer included bonus payments received by virtue of an oil and gas lease executed by him, as gain from sale of capital assets, because, under the local law, title to the oil and gas deposits passed to the lessee on execution of the lease. It was held that the taxing statute "neither says nor implies that the determination of 'gain from the sale or exchange of capital assets' is to be controlled by state law." It was further held that the fact of the passing of title to the oil and gas "is only an incident to the use of his [owner's] land for oil production," and that "the operation, consid-

---

1 Citing Murphy v. Crouse, 135 Cal. 14, 66 P. 971, 87 Am.St.Rep. 90; Morffew v. San Francisco & San Rafael R. R. Co., 107 Cal. 587, 40 P. 810; In re Estate of Piercy, 168 Cal. 750, 145 P. 88; Burton v. Lies, 21 Cal. 87, 91; Western Pacific Ry. Co. v. Godfrey, 166 Cal. 346, 349, 136 P. 284, Ann.Cas.1915B, 825; sections 28, 122, and 126 of the California Probate Code.

2 Citing In re Estate of Stanford, 126 Cal. 112, 118, 54 P. 259, 58 P. 462, 45

L.R.A. 788; Matter of Estate of Patterson, 155 Cal. 626, 632, 102 P. 941, 944, 26 L.R.A.(N.S.) 654, 132 Am.St.Rep. 116, 18 Ann.Cas. 625; In re Estate of Yorba, 176 Cal. 166, 169, 167 P. 854.

3 Followed in Goodell v. Koch, 282 U. S. 118, 51 S.Ct. 62, 75 L.Ed. 247; Hopkins v. Bacon, 282 U.S. 122, 51 S.Ct. 62, 75 L.Ed. 249; Bender v. Pfaff, 282 U.S. 127, 51 S.Ct. 64, 75 L.Ed. 252; United States v. Malcolm, 282 U.S. 792, 51 S.Ct. 184, 75 L.Ed. 714.

ered in its entirety, cannot be viewed as a sale or a conversion of capital assets."

The statute before us, in so far as here applicable, discloses an undoubted intent to tax deliveries of, or transfers of, either (1) legal title to shares or certificates of stock, or (2) rights to receive such shares or certificates. Literally read, the statute taxes such a transfer or delivery, whether effected by voluntary act, involuntary act, or by operation of law, for it makes no exemptions.

In the instant case, however, we are not concerned with the question as to whether or not the "so-called" transfers to the personal representatives of decedent's estate are taxable. The sole issue is whether or not the so-called transfers from the executors to the legatee are taxable. At first blush, it would seem that article 34(o) would make the transactions taxable, but that article and the statute each impose a tax on a transfer or delivery of either the legal title or the right to receive the stock. If the executors transferred or delivered neither the legal title nor right to receive the stock, then there was no taxable transaction. If we look to the law of California for a determination of the question as to whether or not the executors transferred or delivered either legal title or right to receive the stock, then the legal title to and the right to receive the stock was already vested in appellee, and the executors could not have transferred or delivered either to appellee. Thus we are confronted with the question as to whether or not we will apply the California law.

The statute does not expressly make its interpretation depend on local law. Nor do we think dependence of the statute on local law is implied. The common law of the states as administered by the federal courts is well able to determine what is a transfer under such circumstances, without the aid of local law. Such common-law rule, which exists in most states, expressly holds that title to decedent's personalty on his death becomes vested in his personal representative. Construing the transfers under such rule, and not under the rule peculiar to California, it is clear that the executors transferred legal title, and therefore the transfers are taxable.

In Burnet v. Harmel, supra, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199, it is said: "Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation."

In the instant case we find no language evidencing a purpose that the application of the statute shall be controlled by local law, and, in the absence of such language, we have applied a general law which gives "a uniform application to a nationwide scheme of taxation."

Appellee relies on the statement in Poe v. Seaborn, supra, 282 U.S. 101, 117, 51 S.Ct. 58, 61, 75 L.Ed. 239, "that the constitutional requirement of uniformity is not intrinsic, but geographic." That rule is not applicable here. It is applicable in cases where the statute "by express language or necessary implication, makes its own operation dependent upon state law."

It is true that Congress cannot make a transfer out of a transaction which is not so in fact. Applying common law to the instant transaction, there was in fact a transfer. Thus a tax is imposed on a transaction which is a transfer under common law, but which under local law may not be such. In United States v. Childs, supra, although a penalty was prohibited, a claim for interest which was in fact interest under the federal statute was proper, although under the local law the interest would be partially penal. In Burk-Waggoner Ass'n v. Hopkins, supra, an organization was taxed as being a joint-stock association when known as such in common parlance, although it was not so in fact under the local law. These decisions teach that the existence of the necessary fact is determined by the selection of the law which we will apply. And we apply the common law, except when the federal statute, "by express language or necessary implication, makes its own operation dependent upon state law."

In view of these conclusions, it is unnecessary to consider the effect of Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111, and McLaughlin v. Coos Bay Lumber Co. (C.C.A.) 80 F.(2d) 763, on the second and third groups of securities transferred to appellee.

300

In the original complaint filed, appellee alleged that all the property of decedent was community property. That allegation was denied by the answer. The stipulation does not disclose whether or not the property was in fact community property. Whether or not the existence of the fact would make a difference is not raised or discussed by either party. Under these circumstances, we express no opinion on the question as to whether or not the fact that the property was community property would change our result.

Reversed.

WILBUR, Circuit Judge (concurring).

I concur in reversing the decision of the District Court but for reasons which are not in entire accord with what is said in the main opinion.

 It is clear from the provisions of section 800 of the Revenue Act of 1926 that the transfer of the right to receive the stock, which accrues under the law of California at the time of the death of the decedent, imposes a stamp tax upon such a transfer. Consequently, the appellee has no right to recover the money which was thus paid. The statute having provided for the tax the regulations of the Treasury Department could not relieve the transferee of the obligation imposed by the statute. These regulations did not purport to do so. The regulation, article 34, Treas. Regulations 71, subd. M, make the tax applicable upon the transfer in pursuance of a bequest which is in accord with the statutory requirement that such a transfer be taxed. The other regulations are evidently adapted to the situation which occurred in those states where the personal property of the decedent vests in the administrator or executor in the first instance and is transferred by him to the heir or legatee. In such cases it is provided that the transfer of the certificates of stock by the administrator or executor to the legatee or distributee is taxable (article 34, Regs. 71, subd. O), and to avoid double taxation it is provided in article 35 of the Regulations that there is no transfer tax when the property is transferred by the death of the decedent to the executor or administrator. This is transfer by operation of law, and is so designated by subdivision Q of the same article 35, which refers to transfers "resulting wholly by operation of law," and indicates as an example the transfer of the stock from the decedent to executors. This provision of the regulations is applicable only to those states in which the personal property passes by operation of law to the executor or administrator and by transfer from the executor or administrator to the distributee. The argument that the transfer of the right to receive the stock from the decedent to the legatee or distributee, as occurs in California, is not taxable because of the fact that the transfer occurs in a sense by operation of law, entirely overlooks or misconceives the obvious purpose of this regulation which, so far as it applies to stock passing from the decedent, is applicable only to those states in which the title passes through the executor or administrator wherein it is provided by the regulations of the Treasury Department that the tax is to be collected upon the latter transfer to the legatee or distributee and not upon the first transfer to the personal representatives. There are, of course, many other situations in which property may pass by operation of law, as, for instance, in cases of bankruptcy.

I conclude, first, that the statute makes the transfer from the decedent to the legatee in California taxable; second, that the regulations could not in the teeth of the statute make such a transfer nontaxable; third, that the regulations expressly provide for such tax in accordance with the Revenue Act, and that, rightly construed, the exception contained in the regulations with relation to the property passing by operation of law has no application to a bequest in California. For these reasons the judgment should be reversed.

MATHEWS, Circuit Judge.

I concur with Judge WILBUR.