**STATE STREET TRUST CO. v. HASSETT,**
Collector of Internal Revenue.
Civil Action No. 1102.

District Court, D. Massachusetts.
June 12, 1942.

672

Willard B. Luther, of Boston, Mass., for plaintiff.

Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and George H. Zeutzius, Sp. Assts. to Atty. Gen., for defendant.

FORD, District Judge.

In this action the plaintiff seeks to recover $11,897.92, with interest, assessed against and paid by it as documentary stamp taxes with respect to alleged sales, transfers and deliveries of corporate securities to the plaintiff in connection with a merger in 1936.

The facts in the case were stipulated and may be summarized as follows:

The plaintiff, State Street Trust Company (hereinafter referred to as State), was incorporated in 1891 under the laws of Massachusetts. The Union Trust Company (hereinafter referred to as Union) was incorporated in 1927 under the laws of Massachusetts. Both banking corporations had their usual place of business in Boston.

On June 1, 1936, the plaintiff entered into a written agreement with Union pursuant to which the latter thereafter was merged into the plaintiff corporation.

The agreement recited that it was for the purpose of merging Union and its business into the plaintiff and of vesting in the plaintiff all of the former's assets and property. It further recited that the merged company "desires to sell, transfer, assign, and deliver to the Merging company all of its assets and property of every nature and description so as to vest the same and the title thereto" in the plaintiff, subject to the liabilities of Union, and that the plaintiff was willing to acquire and purchase all such assets. The consideration to be paid for the assets of Union was also set forth in the agreement.

The merger contract was made subject to the ratification and approval of the directors and shareholders of each corporation, the Commissioner of Banks of the Commonwealth of Massachusetts and of

the Board of Governors of the Federal Reserve System. The necessary ratification and approvals were duly obtained.

On July 11, 1936, the merger was actually completed. A bill of sale and acknowledgment of liability was executed by which Union sold, assigned, and transferred to the plaintiff "all of its assets and property of every nature and description whatsoever; including therein * * * securities of every nature; evidences of indebtedness of every nature; loans however evidenced; deposits of every class; transfer, registration, trust and agency business and the goodwill connected therewith; * * *".

Prior to the merger, Union held a great many securities in a fiduciary capacity and it controlled many more to which legal title was held by its nominees.

The stocks and bonds with respect to which the plaintiff paid taxes upon the merger may be grouped as follows:

Group I. In the name of its nominees under different types of "agency accounts" $359. These "agency accounts" were agreements with depositors under which Union undertook to collect income, dividends, and maturing securities, supply information and prepare income tax returns. Each party whose securities were held by Union under such agency agreements, promptly after the merger, executed a form by which he "accepted and approved" the substitution of the plaintiff for Union as agent under the "agency agreement" and appointed the plaintiff successor agent. The corporate stocks and bonds held by Union immediately prior to the merger in the name of its nominee were initially placed in the name of the nominee pursuant to verbal agreements that the securities should be so held. In connection therewith the customer either enclosed the certificates in blank on the assignment form thereon or signed a separate assignment thereof. However, in at least two cases the "agency accounts" were opened initially by a cash deposit with which the securities were purchased and placed immediately in the names of Union's nominee partnerships. In all instances of "agency accounts" documentary stamp transfer taxes were paid with respect to the transfers into the name of Union's nominee upon the creation, initially, of such accounts.

Group II. In its own name in its capacity as fiduciary of testamentary trusts $1,589.14. In all such trusts application was made to the appropriate Massachusetts Probate Court for the appointment of the plaintiff as successor trustee to Union and in each case the appointment applied for was made.

Group III. In the name of its nominee in its fiduciary capacity under testamentary trusts $210.28. In all of such cases application was made to the appropriate Massachusetts Probate Court for the appointment of the plaintiff as successor trustee to Union and in each case the appointment applied for was made.

Group IV. In its own name in its capacity as fiduciary under living trusts $1,252.28. In one of these trusts, involving taxes of $10.36, the trust instrument contained a provision that any bank or trust company in which Union might be merged should be the successor of Union without the necessity of any appointment or assignment. In sixteen of these trusts, involving taxes in the amount of $1,241.92, there were provisions in the trust instruments authorizing some party or parties therein named or described to appoint a successor trustee in the event of a vacancy in the trusteeship. The forms varied, but the party authorized to appoint the successor was usually the settlor, sometimes a beneficiary or group of beneficiaries, and occasionally some named person. In every case, however, the appointment was to be definitely consummated by a written designation of the successor trustee affixed to the original instrument and required no application to any court. In all such cases the party or parties designated to appoint the successor did in fact appoint the plaintiff in the manner indicated by the instrument.

Group V. In the name of its nominee in its capacity as fiduciary under living trusts $8,226.38. In thirteen of these trusts involving stamp taxes in the amount of $1,013.18, the trust instrument contained a provision for automatic substitution as trustee for Union of any bank or trust company into which Union might be merged or consolidated. In seventy-three trusts, involving $7,199.02 in taxes, there were provisions in the trust instruments authorizing some party or parties therein named or described to appoint a successor, similar to those in the trusts where Union held securities in its own name. In each case, Union, and not the nominee to whom it later passed title, was named as trustee. And in all cases, the party or parties designated to appoint the successor did in fact

appoint the plaintiff in the manner indicated by the instrument.

All securities held in the names of nominee partnerships under either trusts or agencies were immediately upon issue endorsed in blank by the partnerships. None of the nominee-held securities were re-registered after the merger but continued as before. Securities standing in the name of Union as trustee were, upon the merger, duly endorsed by it as trustee and later transferred either to the plaintiff as trustee or to a nominee partnership.

On August 14, 1940, the plaintiff filed its claim for refund of $11,897.92 of the aforesaid assessment on the ground that the taxes were illegally and improperly assessed for the alleged reason that $11,277.56 in tax was collected on transfers which occurred wholly by operation of law under Massachusetts General Laws and under the Internal Revenue Act and Departmental Regulations; that $359 of the tax was improperly assessed for the reason that no transfer of any character occurred; that, therefore, $11,636.56 of tax should be refunded to the plaintiff, plus interest of $261.36. By letter dated December 16, 1940, the Commissioner rejected the plaintiff's claim.

The question presented is whether under the circumstances set out the taxes assessed with reference to the above five groups were properly assessable under the provisions of Section 800, Revenue Act of 1926 and Schedules A(3) and A(9) of Title VIII thereof, as amended, added to and extended by Section 723(a), 723(c) and 724(a) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, pages 630, 634.

The Revenue Act of 1926 imposes a tax, Section 800, Schedule A(3) of Title VIII, "On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subdivision 2, [stocks and bonds] * * *, whether made upon or shown by the books of the corporation * * *, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not), * * *".

The plaintiff contends that under the Revenue Act involved there must be a "transfer of legal title" to make the transfers taxable and it argues, with respect to Group I (agency agreements), that there was no transfer of legal title; that the only change here was the physical custody. The plaintiff contends as to Groups III and V, where the trust securities were held in the name of the nominees, that there was no transfer of any kind, and, as to Groups II and IV, though it admits in these securities transfers of legal title occurred, yet these transfers were by operation of law. The plaintiff further contends that if it is wrong in its assertion that no transfers took place in Groups I, III, and V, the transfers here were also by operation of law and were not taxable, relying not on the terms of the statute which plainly does not provide that a transfer by operation of law was not taxable, but upon certain provisions of Regulations 71, promulgated with respect to Section 800 of the 1926 Revenue Act.

█ It further contends that Massachusetts law is applicable in determining whether the transfers were by operation of law and cites as its principal authority United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 101 F.2d 399. Cf. City Bank Farmers Trust Co. v. Hoey, 2 Cir., 125 F.2d 577, 579, note 3. I do not agree with this contention. What the Treasury Department means in its Regulations, which will be discussed more fully later, by a transfer caused "wholly by operation of law", and what a state court means, are two entirely different matters. The fundamental question is what was the intention of Congress in enacting the statute. As the court said in Burnet v. Harmel, 287 U.S. 103, 110, 53 S.Ct. 74, 77, 77 L.Ed. 199: "It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nation-wide scheme of taxation. * * * State law may control only when the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law". Niagra Hudson Power Corp. v. Hoey, 2 Cir., 117 F.2d 414; Weil et al. v. United States, 2 Cir., 115 F.2d 999, certiorari denied 313 U.S. 574, 61 S.Ct. 1086, 85 L.Ed. 1532; Welch v. Kerckhoff, 9 Cir., 84 F.2d 295, 299, 106 A.L.R. 1434.

█ We can immediately dispose of the tax imposed with respect to Group I. Here, I believe, the taxpayer is correct. The Act taxes transfers of legal title and

there were no transfers here either of the legal or beneficial title and these securities whose custody was merely changed are not subject to the tax. City Bank Farmers Trust Co. v. Hoey, supra, 125 F.2d page 578.

■ Next, was there a transfer of title with respect to Groups III and V, it plainly appearing that there was a transfer of legal title in Groups II and IV? Complete control of Groups III and V were transferred from Union to State. The nominees, after the merger, held the securities involved in these Groups for State and not for Union. It seems, for all intents and purposes, that State owned the securities after the merger and that there was a transfer of title within the meaning of the provisions of the Revenue Act involved. This was the construction put upon a similar transaction in City Bank Farmers Trust Co. v. Hoey, supra.

■ Turning now to Regulations 71, 1932 Ed., where the plaintiff must find relief, if any is to be granted, the plaintiff argues that the provisions of these Regulations make it clear that the critical test in a case of this type is whether the transfers were effected "by operation of law". This, it says, is expressed negatively in Article 34(r), an example of a taxable transaction: "Upon a merger, the transfer of stock owned by a corporation which is merged into another corporation from the name of the first to the name of the second corporation, such a transfer being effected by the act of the parties and not wholly by operation ·of law". It argues this section negatively exempts from the tax stock held in trust. I cannot agree with this. To be sure, Art. 34(r) is not operative to make the transfers here taxable, because "owned", in this Article, means "beneficially owned" (City Bank Farmers Trust Co. v. Hoey, supra), and the transfers in the instant case are not within that provision. Cf. Art. 34(t) with this conclusion. However, it does not negatively, as the plaintiff contends, exempt the transfers because it fails to speak of stock held in trust. Article 34(r) is not an exclusive provision for taxing transfers resulting from a merger. The construction contended for by the plaintiff would unduly stretch the meaning of this Regulation.

■ The plaintiff contends further that the proposition that transfers by operation of law are exempt is stated affirmatively in 35(r), an example of nontaxable transfer, which reads as follows: "Transfers of shares of certificates of stock which result wholly by operation of law are not subject to the tax. Transfers of this character are those which the law itself will effect without any voluntary act of the parties, such as a transfer of stock from decedent to executor". Article 35(h) states as examples of transfers not subject to tax because they are transfers "wholly by operation of law" those "from the name of a deceased or resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the original trust agreement". Though 35(h) covers only two cases of transfers that result wholly by operation of law, the plaintiff argues: "It is impossible to make any logical or legal differentiation between successions following deaths or resignations than those successions effected by the execution of merger documents". Judge Swan, in his dissenting opinion in City Bank Farmers Trust Co. v. Hoey, supra, agreed with this view. Judge Swan said at page 579 of 125 F.2d: "It does not seem to me that we should unduly strain the language of Article 35(h) of Regulations 71 to hold that the transfer of trust securities effected by the merger is a transfer from the name of a 'resigned trustee to the name of a substituted trustee appointed in accordance with the terms of the trust agreement'". The court in United States v. Merchants Nat. Trust & Savings Bank, supra, took the same view as Judge Swan. However, the majority of the court in the City Bank Farmers Trust Co. case, construing Article 35(q) of Regulations 71, 1931 Ed., which is exactly similar in its language to 35(r) of Regulations 71, 1932 Ed., stated (p. 578) that "Regulations 71, * * *, contains no provision exempting all 'transfers by operation of law'. It is more selective". The court went on to say that transfers effective by a voluntary act of the parties were not within Art. 35(q). With this latter statement I agree. Article 35(h) does not attempt to give any example of a transfer except one taking place "wholly" by operation of law. Mergers do not result that way. They necessitate a voluntary act of the parties and, consequently, are not effected "wholly" by operation of law.

■ To be sure, there is much to be said for Judge Swan's view in the City Bank Farmers Trust Co. case and that

676

taken by the court in the Merchants Nat. Trust & Savings Bank case, but I do not feel that this court should extend the two exemptions in 35(h) to include the transfers here. It may not, as Judge Swan said, unduly strain the language of 35(h) to include the transfers here that took place as a result of the merger, inasmuch as all that took place here is a change of trustees and the trust otherwise was unchanged, but I feel a district court is not authorized to take that view in the presence of such respectable authority as City Bank Farmers Trust Co. v. Hoey, supra. If it is true that the real intent of the statute was to avoid taxation of transfers within the ambit of the same trust, the plaintiff's view should be adopted, but I cannot say that Congress clearly intended this. There is nothing in the statute from which this intention can be deduced and the Regulations stop short of giving one justification for saying so. I have no means of knowing that the Regulations meant to exempt all cases of transfers within the ambit of the same trust (cf. Art. 34(t) in this connection) and through inadvertence failed to cover in some form of language the cases discussed here. Again, I believe the Regulations must be construed strictly, inasmuch as the statute itself makes no exemptions of transfers resulting from operation of law. The Supreme Court has been very careful to say that the language of this statute should not be narrowed in view of the fact that it is a revenue measure exclusively. Cf. Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639; Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111.

One more matter. Doubt has been expressed as to the validity of Art. 35(r) of Regulations 71 in the case of Welch v. Kerckhoff, supra (cf. City Farmers Bank & Trust Co. v. Hoey, supra), on the ground that the statute taxes transfers whether affected by voluntary act, involuntary act, or by operation of law. The view taken in this case is supportable on the ground that Congress had made certain express exemptions and those included in the Regulations are not present. It may very well be that Congress made its own list of exemptions exclusive. However, these Regulations have stood during several amendments to those tax statutes (1928, 1932, and 1934) and must be regarded as having the approval of Congress

and valid. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110, 115, 59 S.Ct. 423, 83 L.Ed. 536; United States v. Baker et al., 1 Cir., 115 F.2d 129, 131.

Judgment will be entered for the plaintiff in accordance with this opinion, with interest and costs.