**LADNER, Former Collector of Internal Revenue, v. PENNROAD CORPORATION.**

No. 6571.

Circuit Court of Appeals, Third Circuit.

May 31, 1938.

BUFFINGTON, Circuit Judge, dissenting.

James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and Edward F. McMahon, Sp. Assts. to Atty. Gen., J. Cullen Ganey, U. S. Atty., of Bethlehem, Pa., and Thomas J. Curtin, Asst. U. S. Atty., of Philadelphia, Pa., for appellant.

George G. Chandler and Robert T. Mc-Cracken, both of Philadelphia, Pa. (C. B. Heiserman, of Philadelphia, Pa., of counsel), for appellee.

Before BUFFINGTON, THOMPSON, and BIGGS, Circuit Judges.

THOMPSON, Circuit Judge.

This is an appeal from a judgment of the District Court for the Eastern District of Pennsylvania. The Pennroad Company, hereinafter referred to as the appellee, brought an action at law to recover $181,798.66 with interest representing transfer stamp taxes alleged to have been illegally assessed and collected by the Collector of Internal Revenue, appellant herein. The District Court entered judgment for the appellee. The following is a summary of the material facts found by the District Court and necessary to a determination of the controversy:

The appellee was incorporated April 24, 1929, with an authorized capital stock of 10,000,000 shares of common stock of no par value. On the day of incorporation the appellee's Board of Directors resolved to issue 5,800,000 shares to be placed under a voting trust with three named trustees for a ten year period and to offer to the registered stockholders of the Pennsylvania Railroad Company at $15.00 per share voting trust certificates representing the common stock. The Pennsylvania Railroad stockholders who desired to exercise their option were instructed to return their warrants together with $15.00 per share to the appellee, whereupon certificates would be sent to the trustees. On May 22, 1929, the three trustees executed a voting trust agreement to which the appellee was a party. The trustees agreed to issue voting trust certificates to the subscribers for the Pennroad stock upon receipt of certificates of stock from the appellee. On the day of incorporation certificates for 67 shares of common stock were issued to the three original incorporators who paid therefor $15.00 per share. Original issue stamps were affixed and cancelled. On May 22, 1929 the original incorporators assigned their certificates for 67 shares of common stock to the voting trustees and a new certificate representing these shares was issued in their names to the voting trustees. Transfer stamps were affixed and cancelled. Thereafter the appellee received warrants from the Pennsylvania Railroad stockholders for 5,799,993 shares of Pennroad Corporation common stock together with $15.00 for each share; issued 46 certificates representing those shares to the voting trustees and directed the voting trustees to issue voting trust certificates to the former holders of the warrants. Practically the same procedure was followed in the case of two additional issues, making a total of 9,090,000 shares issued. The appellant assessed documentary stamp taxes in the sum of $181,798.66 and collected this sum under protest. The appellee brought suit for the recovery of those taxes and recovered judgment. This appeal is from that judgment.

It will be noted that the subscribers sent checks for the stock to the appellee; the appellee issued stock to the trustees, who then issued trust certificates to the subscribers. The question is whether this transaction is subject to documentary tax. A voting trust is ordinarily created by stock being issued to stockholders who in turn deposit it with the trustees. Such a transaction automatically incurs the stamp tax. The fact that the stock in this case was delivered directly to the trustees does not, in our opinion, obviate the obligation to pay the stamp tax. A transfer of the right to receive stock is taxable within the meaning of the Revenue Act of 1926, Title, 8, § 800, Schedule A-3, 26 U.S.C.A. § 902 and note, and Articles 31 and 34 of Treasury Regulations 71, the pertinent portions of which are set out in the margin.[1]

---

[1] Revenue Act of 1926

"Title VIII.—Stamp Taxes

"Sec. 800. On and after the expiration of thirty days after the enactment of this Act there shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and

In Founders General Corp. v. Hoey, 300 U.S. 268, 275, 57 S.Ct. 457, 460, 81 L.Ed. 639, the Supreme Court said: "* * * The legal title to the shares was received by the

other documents, instruments, matters, and things mentioned and described in Schedule A of this title, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, by any person who makes, signs, issues, sells, removes, consigns, or ships the same, or for whose use or benefit the same are made, signed, issued, sold, removed, consigned, or shipped, the several taxes specified in such schedule. The taxes imposed by this section shall, in the case of any article upon which a corresponding stamp tax is now imposed by law, be in lieu of such tax." 44 Stat. 99, 26 U.S.C.A. § 900 and note.

## "Schedule A.—Stamp Taxes

"3. *Capital stock, sales or transfers:* On all sales, or agreements to sell or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share: Provided, That it is not intended by this title to impose a tax upon an agreement evidencing a deposit of certificates as collateral security for money loaned thereon, which certificates are not actually sold, nor upon the delivery or transfer for such purpose of certificates so deposited, nor upon mere loans of stock nor upon the return of stock so loaned: Provided further, That the tax shall not be imposed upon deliveries or transfers to a broker for sale, nor upon deliveries or transfers by a broker to a customer for whom and upon whose order he has purchased same, but such deliveries or transfers shall be accompanied by a certificate setting forth the facts: Provided further, That in case of sale where the evidence of transfer is shown only by the books of the corporation the stamp shall be placed upon such books; and where the change of ownership is by transfer of the certificate the stamp shall be placed upon the certificate; and in cases of an agreement to sell or where the transfer is by delivery of the certificate assigned in blank there shall be made and delivered by the seller to the buyer a bill or memorandum of such sale, to which the stamp shall be affixed; and every bill or memorandum of sale or agreement to sell before mentioned shall show the date thereof, the name of the seller, the amount of the sale, and the matter or thing to which it refers. Any person liable to pay the tax as herein provided, or anyone who acts in the matter as agent or broker for such person, who makes any such sale, or who in pursuance of any such sale delivers any certificate or evidence of the sale of any stock, interest or right, or bill or memorandum thereof, as herein required, without having the proper stamps affixed thereto, with intent to evade the foregoing provisions, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall pay a fine of not exceeding $1,000, or be imprisoned not more than six months, or both." 26 U.S.C.A. § 902 and note.

## Treasury Regulations, 71

Art. 31. *Basis of tax.*—Every transfer or sale of stock, either before or after issuance of a certificate, is taxable. The tax accrues at time of making the sale or agreement to sell or memorandum of sale, or delivery of, or transfer of the legal title to shares, or certificates of stock, or of profits, or of interest in property or accumulations in any corporation, joint-stock company, or association, or of the right to subscribe for or to receive such shares or certificates, regardless of the time or manner of the delivery of the certificate or agreement or memorandum of sale.

Art. 34. *Sales and transfers subject to tax.*—The following transactions are subject to the tax:

(a) The sale, or transfer, or change of ownership, of certificates of stock, or of profits, or of interest in property or accumulations in corporations, joint-stock companies, or associations.

(b) The sale or transfer of shares of stock, whether or not represented by certificates.

(c) The transfer of stock to or by trustees.

(d) The transfer of voting trust certificates.

(e) The sale or transfer of temporary or interim certificates of stock.

(f) The sale or transfer of certificates or shares representing beneficial interests in an association.

nominee from the newly formed corporation; but the authorization rendering his holding lawful was received from the taxpayer. The legality of the issuance of the stock in the names of the nominees rests on the fact that the taxpayers authorized such issuance and granted their nominees the right to receive the stocks entered in their names. The grant of that authority is a transfer of 'the right to receive' within the meaning of the act; and we are not to look beyond the act for further criteria of taxability."

We think the taxing act should be broadly construed and that the uncontradicted facts establish the appellant's contention that the right to receive the shares of stock was transferred from the subscribers to the trustees.

The judgment of the District Court is reversed.

BUFFINGTON, Circuit Judge, dissents.