**B. F. AVERY & SONS CO. v. GLENN, Collector of Internal Revenue (two cases).**

**GLENN, Collector of Internal Revenue, v. B. F. AVERY & SONS CO.**

**Nos. 7756–7758.**

Circuit Court of Appeals, Sixth Circuit.

Sept. 18, 1939.

---

[1] No opinion for publication.

John C. Doolan, of Louisville, Ky. (Trabue, Doolan, Helm & Helm, of Louisville, Ky., on the brief), for B. F. Avery & Sons Co.

James P. Garland, Sp. Asst. to Atty. Gen. (James W. Morris, Asst. Atty. Gen., Sewall Key, J. Louis Monarch, and James P. Garland, Sp. Assts. to Atty. Gen., and Eli H. Brown, III, of Louisville, Ky., on the brief), for Glenn, collector.

Before HICKS, SIMONS, and ARANT, Circuit Judges.

HICKS, Circuit Judge.

B. F. Avery & Sons, a Kentucky corporation, herein called the Old Company, had long been one of the leading agricultural implement manufacturers in the country but for three years prior to December, 1932, it had been in straitened financial circumstances, and owed, approximately two and a quarter million dollars to banks, and one hundred thousand dollars each to Huber Manufacturing Company, and to certain stockholders.

On December 6, 1932, the stockholders of the Old Company were called together to consider a plan for refunding its indebtedness and for refinancing future operations through the organization of a new company. The stockholders by a vote of "more than three-fourths in amount of each class concurring therein" approved the plan. Under it B. F. Avery & Sons Company, a Delaware corporation, herein called the New Company, was organized, at the instance of the stockholders of the Old Company and its creditors. The Old Company by an instrument dated December 31, 1932, conveyed all of its assets to the New, and in consideration therefor the New Company agreed to assume all the existing liabilities of the Old and to pay them, as provided in the plan, by executing its own notes to creditors secured by a trust indenture and by issuing " * * * *its own shares of stock without par value, to the holders of shares of stock in the vendor, in exchange for their respective holdings, in the manner and to the extent provided in said plan.*" (Italics ours.)

In the plan the New Company was organized with an authorized capital of 300,000 no par shares. Of these, four shares were to be issued for each of the 23,145 of preferred stock of the Old Company, and one share for each of the 29,733 shares of the outstanding common stock of the "old company and outside owned shares of its subsidiary to B. F. Avery & Sons Plow Company," making a total of 122,313 shares for Old Company shares.

The creditor banks and the Huber Company subscribed for notes of the New Company to the amount of 75% of their claims; and in addition agreed to subscribe for 115,000 shares of the new issue of stock at $5.00 per share, to be paid by crediting a like amount upon the Old Company's notes, thus extinguishing the Old Company's indebtedness to them by that amount.

Thus, 237,313 shares of the New Company's stock were to be issued; 209,474 shares were actually issued. But they were issued *directly* to a Voting Trustee upon the transfer to it from the stockholders and creditors of the Old Company of their right to receive the stock. This transfer was made pursuant to, and by virtue of, a Trust Indenture entered into by the Old and New Companies whereby the notes issued by the New Company were secured by a Trust Mortgage lien upon the property conveyed to the New Company, and to further secure the notes it was agreed that "all shares of stock issued by" the New Company should be issued to the Trustee upon direction of the "subscribers" under the terms of a Voting Trust entitling it "to exercise all the powers incident to full and complete ownership of all shares * * *." Subsequently in January, 1933, the Voting Trustee agreed with the stock-

holders to issue Voting Trust Certificates in exchange for the stock of the New Company to be assigned to it.

The Commissioner of Internal Revenue assessed a documentary stamp tax of $8378.96 and interest against the New Company under Sec. 723(a), (c), of the Revenue Act of 1932, 47 Stat. 272, 26 U. S.C. § 902(b), 26 U.S.C.A. § 902(b), upon the transfer of the 209,474 shares of the New Company stock to the Voting Trustee. He also assessed a tax of $4892.52 and interest on the transfer of the 122,317 shares of New Company stock by the Old Company to its stockholders.

The New Company paid the taxes upon each assessment and filed its claims for refund, which were rejected. It thereupon brought suit in the District Court to recover each payment, upon the ground that it was illegally exacted. The two cases were heard together by the District Judge without the intervention of a jury and were decided in one opinion.

The court dismissed the suit to recover the tax paid on the transfers to the Voting Trustee and the New Company appealed (No. 7756). It allowed a recovery of the tax paid on the transfer from the Old Company to its assenting stockholders, holding that the stockholders themselves and not the Old Company were entitled to the 122,317 shares of New Company stock and that there was no transfer from the Old Company to its shareholders which was the subject of a tax (No. 7758). But the court went further and allowed the Collector a credit of $4,600 and interest for a documentary stamp tax upon a purported transfer by the Old Company of the 115,-000 shares of stock of the New Company to the creditors of the Old, a tax which had never been assessed or claimed (No. 7757). Each party appealed from so much of this judgment as was adverse to it (Nos. 7757-8). All the appeals were consolidated for hearing.

■ In No. 7756, the appellant, the New Company, does not press its appeal. It properly concedes that under recent cases, including Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639, the decision was correct. The judgment in No. 7756 is therefore affirmed.

■ We are not in accord with the court's conclusions in Nos. 7757 and 7758. The Old Company conveyed all of its assets and property to the New Company; and, under the italicized portions of the indenture of sale hereinbefore quoted, the 122,-317 shares of New Company stock were issued as a part of the consideration for the properties conveyed.

As pointed out in United States v. Brown Fence & Wire Co., D.C., 9 F.Supp. 1008 (affirmed by this court—6 Cir., 88 F.2d 1005) the arrangement by which the shares were to be transferred to the stockholders of the Old Company was a "convenient method of delivering the stock to its ultimate owner, * * *" but at the same time was tantamount to a transfer of the right of the Old Company to receive the shares. See Sec. 723(a), Par. 3 of the Revenue Act of 1932.

As pointed out in Founders General Corp. v. Hoey, supra, upon the authority of which we affirmed the Brown Fence & Wire Co. case, supra, the right of the Old Company to receive the stock in the New, and the transfer thereof to the old stockholders were effected at one time by the same instrument. See also Raybestos-Manhattan Co. v. U. S., 296 U.S. 60, 56 S. Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Standard Oil Co. of Calif. v. U. S., 9 Cir., 90 F.2d 571; United States v. Vortex Cup Co., 7 Cir., 84 F.2d 925; United States v. Revere Copper & Brass Inc., 2 Cir., 100 F.2d 391.

■ Even upon the assumption that the judgment of the court in No. 7758 was correct, we think it was unauthorized to allow a set-off which had never been pleaded for a tax that had never been assessed. We may not thus invade the province of the Collector.

In No. 7758 the court entertained the view that the Old Company was first entitled to the 115,000 shares and that their issuance to creditors was in fact a transfer by the Old Company to the creditors. We think this view was erroneous. As pointed out above, these shares were issued to creditors by the New Company to discharge its liability under its agreement with the Old Company to assume its debts.

The judgments appealed from in Nos. 7757 and 7758 are reversed and this case is remanded to the District Court for a new trial in accordance with the views herein announced.