## UNITED STATES v. BAKER et al.
### No. 3414.

Circuit Court of Appeals, First Circuit.

Oct. 28, 1940.

George H. Zeutzius, Sp. Asst. to Atty. Gen., for appellant.

Ropes, Gray, Boyden & Perkins and Charles C. Cabot, all of Boston, Mass., for appellees.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

This action at law was brought against the United States by the trustees of Massachusetts Utilities Associates, a voluntary trust or association, for the recovery back of documentary internal revenue stamp taxes imposed by the provisions of title 8, Section 800 and Schedule A-3 of the Revenue Act of 1926, 44 Stat. 99, 101–102, 26 U.S.C.A. Int.Rev.Acts, page 289. The district judge, who heard the case without a·jury upon stipulation of facts, gave judgment for the plaintiffs, considering himself bound by the decision of this court in White v. Consolidated Equities, 1 Cir., 78 F.2d 435. Appeal by the Government was argued before Bingham, Wilson and Sweeney, JJ., and on March 25, 1939, the court announced its decision (Sweeney, J., dissenting) that the judgment below must be reversed and judgment entered for the United States. A petition for rehearing was granted and reargument was had before the same court. No decision having been reached, due to the illness of Judge Wilson, a second reargument was ordered before the court as now constituted.

Shortly after its organization, in 1927, the Massachusetts Utilities Associates, hereinafter called the Investment Trust, issued 1,875,000 of its common shares to the Massachusetts Utilities Associates Common Voting Trust, hereinafter called the Voting Trust, in exchange for an equal number of Voting Trust certificates. Stamp taxes on this transaction were paid as required by law, and no question is now presented with respect thereto.

During the period from 1927 to 1930 the Investment Trust disposed of 1,779,972 of these Voting Trust certificates, by public sale. Upon making sales, the Investment Trust would instruct the Old Colony Trust Company (common depository and transfer agent of the Investment Trust and the Voting Trust) that the number of Voting Trust certificates sold were to be transferred out of the name of the Investment Trust and into the names of the purchasers, and that new certificates were to be delivered to such purchasers upon receipt of the purchase price. The Investment Trust paid the stamp tax of 2 cents per share upon these sales, the aggregate payment amount-

ing to $35,599.44. It is this sum that is now in question.

The applicable portion of the Revenue Act of 1926 is as follows:

*"Schedule A.—Stamp Taxes * * *

"3. Capital stock, sales or transfers: On all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of. stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates, whether made upon or shown by the books of the corporation, or by any assignment in blank, or by any delivery, or by any paper or agreement or memorandum or other evidence of transfer or sale, whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not, on each $100 of face value or fraction thereof, 2 cents, and where such shares are without par or face value, the tax shall be 2 cents on the transfer or sale or agreement to sell on each share * * *."

We assume, without deciding, that the Voting Trust is not such an "association" as comes within the definition of "corporation" in the Revenue Act. White v. Hornblower, 1 Cir., 27 F.2d 777. Therefore we do not hold that the transfers in question were taxable as "sales * * * of legal title to * * * certificates of stock * * * in any corporation."

▮ It is conceded, however, that the Investment Trust is such an "association" as comes within the definition of "corporation". The property of the Investment Trust is held in trust for the benefit of the holders of its transferable shares of stock. Such Investment Trust shares, in turn, are held by the trustees of the Voting Trust in trust for the holders of the Voting Trust certificates. Thus, the latter certificates represent a beneficial interest in the property of the Investment Trust, a "corporation" within the meaning of the Act. When the Investment Trust made sales of legal title to Voting Trust certificates, we think the transfers were taxable under Schedule A-3 as "sales * * * or transfers of legal title to * * * certificates * * * of interest in property or accumulations in any corporation * * *." This is the substance of the transaction. In form the Investment Trust did not transfer to purchasers the legal title to the actual pieces of paper constituting the Voting Trust

certificates theretofore held by the Investment Trust. But it did sell to the purchasers the "rights * * * to receive" a corresponding number of new Voting Trust certificates—which also comes within the language of Schedule A-3.

■ The construction we have adopted puts no strain upon the words "interest in property" and comports with the general purpose of the Act. As the Supreme Court said in Raybestos-Manhattan, Inc. v. United States, 296 U.S. 60, 62, 63, 56 S.Ct. 63, 64, 80 L.Ed. 44, 102 A.L.R. 111: "The stock transfer tax is a revenue measure exclusively. Its language discloses the general purpose to tax every transaction whereby the right to be or become a shareholder of a corporation or to receive any certificate of any interest in its property is surrendered by one and vested in another. * * * The reach of a taxing act whose purpose is as obvious as the present is not to be restricted by technical refinements."

Voting Trust certificates, representing in a practical sense an interest in the profits and property of a corporation, have no peculiar attributes which would render it inappropriate to include them within the sweep of the language of the stock transfer tax. If the narrow interpretation contended for by the taxpayer should prevail, it would be a simple thing to avoid the stamp tax by pooling corporate shares in a voting trust and distributing voting trust certificates to the public. Such certificates, though the only marketable security controlling an interest in the corporation, would thereafter pass from hand to hand free of the transfer tax.

■ The Act is clear enough to reach the transactions now in question, without reference to the Regulations. But if the language were considered doubtful, the Regulations clinch the matter. The original stock transfer tax was enacted in 1914 in less specific form (38 Stat. 759) and was amended somewhat in 1917, becoming Section 800 and Schedule A-4 (Title VIII) of the Revenue Act of October 3, 1917, 40 Stat. 322. Section 1107, Schedule A-4 of the Revenue Act of 1918, 40 Stat. 1135, was substantially the same. Since then (except for differences in rate) provisions practically identical with the 1918 Act have been re-enacted in every subsequent revenue act. The first Regulations issued by the Commissioner in pursuance of the 1918 Act were Regulations 40 (1919). Article 12(d) provided specifically that "the transfer of voting trust certificates is subject to tax." The same provision has been contained in every subsequent Regulation. Reg. 40 (1922), art. 12(d); Reg. 71 (1926), art. 34(c); Reg. 71 (1932) art. 34(c). Here we have a reasonable interpretation of the statute, consistently adhered to by the Commissioner, and successive re-enactments of the statute by Congress without change in phraseology. In the face of this, even if we were at liberty to hold the Commissioner's Regulation invalid, we should certainly have no inclination to do so.

Corporation of America v. McLaughlin, 9 Cir., 100 F.2d 72, 78, is squarely in point and reaches the same conclusion. In that case certificates of stock in the Bank of Italy evidenced also, by endorsement thereon, a corresponding interest in a voting trust which held the shares of stock of a companion corporation known as the Corporation of America. The stockholders of the Bank of Italy transferred 2,000,000 shares of its capital stock to a third corporation called Transamerica Corporation. It was held that these transfers involved a double stamp tax, one for the transfer of the shares in the Bank of Italy and another for the transfer of the interest in the voting trust holding the shares of Corporation of America. The court said: "A 'legal title' to a certificate of profit or of interest in accumulations in any corporation, arising from a beneficial interest in a trust, is transferable though the trust res consisting of the shares to which the corporate profits are distributed is not transferred." The taxpayer relies strongly on Maloney v. Portland Associates, 9 Cir., 109 F.2d 124, a later decision of the same court. In that case the common stock of a corporation was held by a voting trust. When the corporation decided to issue further shares of common stock it went through the form of issuing simultaneously one voting trust certificate and one share of stock in the corporation; the certificate went to the subscriber and the stock went to the voting trust. The court reasoned in effect that there was but a single transaction; that the corporation merely issued one share of stock which, however, at the moment of transfer was split into a legal and an equitable fragment. Hence, the court concluded, only one transfer tax was collectible. This case, whether rightly or wrongly decided, was considered by the court to be distinguishable from its earlier

opinion in Corporation of America v. McLaughlin, supra, which it cited. The facts of the Maloney case are different from those in the case at bar because in the latter there were undoubtedly two distinct transactions; first, a completed transfer of all the shares of the Investment Trust in exchange for all the certificates of the Voting Trust, and, second, a subsequent transfer of the Voting Trust certificates to the public.

The taxpayer also relies upon the opinion of this court in White v. Consolidated Equities, 1 Cir., 78 F.2d 435. We shall not stop to make a minute examination of the facts of this case. Judge Wilson and Judge Bingham who participated in its decision considered that it was distinguishable, as is apparent from the earlier opinion in the case at bar filed by Judge Wilson on March 25, 1939, but subsequently withdrawn. If White v. Consolidated Equities may fairly be taken as contrary to the conclusion we have reached, it must to that extent be considered overruled.

The judgment of the District Court is reversed and the case is remanded to that court with directions to enter judgment for the United States.