## ORPHEUM BLDG. CO. v. ANGLIM.
### No. 9936.

Circuit Court of Appeals, Ninth Circuit.
April 23, 1942.

Chickering & Gregory and W. Burleigh Pattee, all of San Francisco, Cal., for appellant.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Frank K. Foster, and Edward H. Hammond, Sp. Assts. to Atty. Gen., and Frank J. Hennessy, U. S. Atty., and Esther B. Phillips, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

HANEY, Circuit Judge.

Appeal is taken from a judgment for appellee in an action brought by appellant to recover stamp taxes paid by it.

In 1932, Marshall Square Building Company, a California corporation, hereafter called Marshall Square, conveyed certain property in trust to secure the payment of its bonds. It defaulted in the payment of interest due on the bonds on February 15, 1934. A bondholders' committee was thereafter formed. The committee and Marshall Square entered into an agreement dated May 20, 1936, which set forth a plan of reorganization as follows: a new corporation was to be organized and in exchange for the unincumbered title to the properties of Marshall Square was to issue 92½% of its stock to the bondholders of Marshall Square, and 7½% of its stock to the stockholders of Marshall Square.

The committee submitted the plan to the bondholders in writing on November 9, 1936. The plan as so submitted provided for the execution by each of the bondholders of a document approving the plan and appointing the committee as his attorney in fact to consent to the release of the trust indenture and to accept voting trust certificates for the stock he was entitled to receive under the plan. After sufficient bondholders had consented to the plan, the taxpayer was organized under the laws of Delaware.

The plan was carried out as follows: Marshall Square delivered to an escrow agent its deed to its properties to the taxpayer; the trustee delivered to such escrow agent a release of the lien of the trust indenture; the taxpayer delivered to such escrow agent a certificate for 12,934 shares of its stock in the name of Marshall Square, and another certificate for 159,520 shares of its stock in the names of 5 individuals as voting trustees; and the voting trustees delivered to such escrow agent voting trust certificates representing the 159,520 shares of taxpayer's stock. Marshall Square's deed and the trustee's release were then delivered to the taxpayer, the stock certificate for 12,934 shares of taxpayer's stock was delivered to Marshall Square, the stock certificate for 159,520 shares of taxpayer's stock was delivered to an agent of the voting trustees. Presumably, the voting trust certificates were then delivered to the old bondholders of Marshall Square.

The fair market value of the realty conveyed to the taxpayer, and of the taxpayer's stock delivered to the escrow agent was $1,517,695. The total amount due on Marshall Square bonds was $1,595,200 plus unpaid interest. The taxpayer affixed revenue stamps amounting to $112.50 to the deed. The Commissioner of Internal Revenue assessed an additional tax of $1,405.50 on account of the conveyance, computing the tax on a valuation of $1,517,695.

The taxpayer affixed revenue stamps to its stock book in payment of the tax on the original issue of the stock amounting to $1,550.00. The Commissioner determined that the transaction was the equivalent of the following: (1) issuance of taxpayer's stock to Marshall Square; (2) transfer of the right to receive such stock by Marshall Square to the voting trustees; (3) issuance of voting trust certificates by the voting trustees to Marshall Square; (4) transfer of the right to receive such voting trust certificates by Marshall Square to the bondholders. The Commissioner therefore assessed an additional tax of $6,380.80 on the second, and a like tax on the fourth, transfer mentioned.

The taxpayer paid these amounts with interest, and sought, but was refused by the Court below, recovery for the total amount paid. The trial court's theory differed from that of the Commissioner. The trial court conceived that the transaction was the equivalent of the following: (1) issuance of the taxpayer's stock to Marshall Square; (2) transfer of the right to receive such stock by Marshall Square to the bondholders; (3) transfer of the right to receive such stock by such bondholders to the voting trustees; and (4) issuance by the voting trustees to the bondholders of the voting trust certificates. The trial court held, therefore, that a tax should have been paid on the second and third transfers.

We think neither of these theories is correct and hold that the transaction was the equivalent of: (1) issuance of taxpayer's stock to the bondholders; (2) transfer by the bondholders of the right to receive such stock to the voting trustees; (3) issuance of the voting trust certificates by the voting trustees to the bondholders.

With respect to the conveyance, the trial court found: "Said 12,934 shares were delivered to the Marshall Square Building Company in consideration of the Marshall Square Building Company's conveyance * * *"

The Revenue Act of 1932, § 725, 26 U.S.C.A. Int.Rev.Acts, page 635, added to the Revenue Act of 1926, a provision taxing conveyances of realty. As amended, the provision specifies that the tax is to be measured on particular multiples of "the consideration or value of the interest or property conveyed, exclusive of the value of any lien or encumbrance remaining thereon at the time of sale". Article 77, of Treasury Regulations 71, promulgated under the act in question, provides that "the tax is computed upon the full consideration for the transfer less all encumbrances which rest on the property before the sale and are not removed by the sale".

The statute permits the tax to be measured by (1) the consideration; (2) the value of the interest conveyed; or (3) the value of the property conveyed. Since in this case, the tax was measured by the "value * * * of the property conveyed", the Commissioner's action was within the words of the statute. Appellant contends, however, that the regulation limits the statute so that only the consideration is to be used to measure the tax. We think such contention cannot be upheld. The regulation deals with only one of the three bases which may be used to compute the tax. It does not purport to say that the basis dealt with is the

only one which can be used. The other two bases need no explanation by means of regulations, and we believe it to be obvious, therefore, that the regulations were not intended to reach the result contended for by appellant.

With respect to the tax on the transfer of stock appellee states that certain decisions of this court "are clearly wrong". We suppose that such statement is an implied invitation to overrule the prior cases decided here. For that reason we will give a more extended examination of the question than would otherwise be required.

Section 5 of the Act of October 22, 1914, 38 Stat. 745, 759, levied a tax "on all sales, or agreements to sell, or memoranda of sales or deliveries or transfers of shares or certificates of stock in any association, company, or corporation * * * whether entitling the holder' in any manner to the benefit of such stock * * *" and in a separate provision on certificates "of profits, or any certificate or memorandum showing an interest in the property or accumulations of any association, company, or corporation, and on all transfers thereof * * *" as described in Schedule A thereof. That language was repeated in § 800, Schedule A(4), of the Act of October 3, 1917, 40 Stat. 300, 322, with two exceptions: (1) that the tax was levied on all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of "legal title to" such shares or certificates; and (2) the provision regarding certificates of profits or accumulations in any corporation was omitted.

Section 1 of the Revenue Act of 1918 (Act of February 24, 1919, 40 Stat. 1057) defined the word "corporation" to include association, and § 1100 et seq., Schedule A(4), levied a tax on "all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to shares or certificates of stock or of profits or of interest in property or accumulations in any corporation, or to rights to subscribe for or to receive such shares or certificates * * * whether entitling the holder in any manner to the benefit of such stock, interest, or rights, or not * * *." This language consisted of the language used in the Act of October 22, 1914, and (1) the words "legal title to" from the Act of October 3, 1917, (2) the newly added words "or to rights to subscribe for or to receive such shares or certificates". The language of the Revenue Acts of 1921,[1] 1924[2] and 1926[3] was identical with that quoted above from the 1918 act. None of the Congressional Committee Reports on the bills which became these acts sheds any light on the problem before us.

The Revenue Act of 1932 (Act of June 6, 1932, 47 Stat. 169) made a slight change in the language previously used. Section 723 thereof, by amendment of the provision in the 1926 act, 26 U.S.C.A. Int.Rev. Acts, page 63, levied a tax on "all sales, or agreements to sell, or memoranda of sales or deliveries of, or transfers of legal title to any of the shares or certificates mentioned or described in subdivision 2, or to rights to subscribe for or to receive such shares or certificates * * * (whether entitling the holder in any manner to the benefit of such share, certificate, interest, or rights, or not) * * *." The shares or certificates mentioned and described in subdivision 2 (see § 722) were "shares or certificates of stock, or of profits, or of interest in property or accumulations * * *." The Act of June 29, 1936, 49 Stat. 2029, 26 U.S.C.A. Int.Rev.Acts, page 631, repeated the words quoted.

In ordinary speech, when we speak of "sales" of stock, or of "agreements to sell" stock, or of "memoranda of sales" of stock, or of "deliveries of" stock, or of "transfers" of stock, we mean the entire (both legal and equitable) title to such stock. However, since the legal title to stock may be separated from the equitable title thereto, it is obvious that there may be a transfer also of only the legal, or of only the equitable title to the stock. If the tax is laid only on those transfers which include both titles, fewer transactions would be taxed than if the tax is laid on transfers of one of the titles alone. The statute in question taxes sales, agreements to sell, memoranda of sales, deliveries and transfers of "legal title" to stock, thus extending the reach of the taxing act, but the statute does not tax

---

[1] Act of November 23, 1921, 42 Stat. 227, 301, §§ 2, 1100 et seq., Schedule A(3).

[2] Act of June 2, 1924, 43 Stat. 253, 334, §§ 2, 800 et seq., Schedule A(3), 26 U.S.C.A. Int.Rev.Acts, pages 1, 107.

[3] Act of February 26, 1926, 44 Stat. 9, 101, §§ 2, 800 et seq., Schedule A(3), 26 U.S.C.A. Int.Rev.Acts, pages 145, 289.

sales, agreements to sell, memoranda of sales, deliveries and transfers of the "equitable title" to stock

In addition, the statute taxes all sales, agreements to sell, memoranda of sales, deliveries, and transfers of the "rights to subscribe for or to receive such shares or certificates". Under the doctrine of ejusdem generis, the statute must be held to tax sales, agreements to sell, memoranda of sales, deliveries, and transfers of the rights to subscribe for or to receive the "legal title" (and not the equitable title) to such shares or certificates, unless judicial authority is contrary. Respondent presents no argument on the precise question, other than to say that certain cases decided by this court are "wrong".

Many of the cases cited by the parties involve transfers of the entire title, or of the rights to receive the entire title to stock, and are therefore not in point. Thus where A corporation agrees to transfer its assets to B corporation, and B corporation agrees to issue its stock in payment therefor to C, the transaction is the equivalent to two transfers. Since A furnishes the consideration, A has the right to receive the entire title to the stock in B. By its contract with B, however, A has transferred such right to, or relinquished it in favor of, C. There is, therefore, a taxable transfer from A to C,[4] of the right to receive the entire title to the stock in B. Since the act specifically taxes transfers of "legal title", if, in the example stated, C gets, by the transfer, only the legal title, there is still a taxable transfer from A to C, because A (which is entitled to receive both the legal and equitable title) transfers the "legal title" to, or relinquishes it in favor of, C.[5]

If A is entitled to receive stock in B, and directs B to transfer such stock to C who holds the legal title to the stock as trustee, there is a taxable transfer from A to C. · It makes no difference how A becomes entitled to receive stock in B, for A's right may spring from a subscription for stock in B by A,[6] from a dividend of stock in B,[7] or from a purchase of stock in B.[8] In effect, the transaction is the same as if A owned the stock in B, and conveyed it to C as trustee,[9] or where C owned the stock in B, as trustee, and conveyed it to D as trustee.[10] In all these cases, there is a transfer of legal title to C. The same principle is applicable to the more complicated facts, as follows: stockholders in A transfer their stock in A to C as trustee; A conveys assets to B for stock in B; B then conveys such assets to D for stock in D, but directs D to issue such stock to C; C then directs D to issue such stock to the stockholders of A. In such a case, there is a taxable transfer from C to the stockholders of A.[11]

The taxability of a transfer of only the equitable title to stock was not involved in any of the cases above discussed. If A, who owns stock in B, transfers the stock to C in trust for A, actually there is a transfer of only the legal title because

4 Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 56 S.Ct. 63, 80 L.Ed. 44, 102 A.L.R. 111; Standard Oil Co. of California v. United States, 9 Cir., 90 F.2d 571; United States v. Revere Copper & Brass, 2 Cir., 100 F. 2d 391; Niagara Hudson Power Corporation v. Hoey, 2 Cir., 117 F.2d 414; Koppers Coal & Transportation Co. v. United States, 3 Cir., 107 F.2d 706; United States v. Brown Fence & Wire Co., D.C.Ohio, 9 F.Supp. 1008, affirmed 6 Cir., 88 F.2d 1005; United States v. Vortex Cup Co., 7 Cir., 84 F.2d 925; United States v. Lawrence Stern & Co., 7 Cir., 89 F.2d 485; American Gas Machine Co. v. Willcuts, 8 Cir., 87 F.2d 924.

5 B. F. Avery & Sons Co. v. Glenn, 6 Cir., 106 F.2d 613.

6 Founders General Corp. v. Hoey, 300 U.S. 268, 57 S.Ct. 457, 81 L.Ed. 639.

7 Iron Fireman Mfg. Co. v. United States, 9 Cir., 106 F.2d 831.

8 In re Consolidated Automatic Merchandising Corp., 2 Cir., 90 F.2d 598; Ladner v. Pennroad Corporation, 3 Cir., 97 F.2d 10, 118 A.L.R. 1289.

9 Cliffs Corporation v. United States, 6 Cir., 103 F.2d 77; Goodyear Co. v. United States, 273 U.S. 100, 47 S.Ct. 263, 71 L.Ed. 558.

10 United States v. Merchants Nat. Trust & Savings Bank, 9 Cir., 101 F.2d 399.

11 Becker v. Bank of Commerce Liquidating Co., 8 Cir., 102 F.2d 633. Although in that case, the taxability of other transfers was not involved, it is interesting to note that, based on the principles above stated, there were five taxable transfers: (1) transfer to C of their stock in A, by A's stockholders; (2) transfer to A by B of B's stock; (3) transfer to B by D of D's stock; (4) transfer to C by B of D's stock; (5) transfer to A's stockholders by C of D's stock. (It is assumed that the B and D stock was not an original issue).

A retains the beneficial interest in, or equitable title to, such stock. If, however, A transfers the stock in B to C as trustee for D, there is a transfer by A to C of the "legal" title to the stock in B, and also a transfer by A to D of the "equitable" title to the stock in B. While in accordance with the principles above stated, a departmental ruling [12] and regulations promulgated under the various acts,[13] the transfer of the "legal" title from A to C is taxable, there is no ruling or regulation which holds the transfer of the "equitable" title to also be subject to a tax. It is significant that no such ruling has been made.

Two cases, decided by this court, are exactly in point. Corporation of America v. McLaughlin, 9 Cir., 100 F.2d 72, covers several different issues. The first issue was as follows: the stockholders of A subscribed for stock in B, and agreed with C that they would transfer all their rights in the stock in B to C to be held by C in trust for A's stockholders, who were to receive nothing to show ownership of an interest in B, except an indorsement on the certificate of stock in A, that the holder of such certificate also owned a beneficial interest in the stock of B held by C. B thereafter declared a stock dividend, which naturally went to the owner of the legal title to the stock in B. Such owner was C. A further indorsement was then made on stock in A to show ownership by the holder thereof of an additional beneficial interest in stock in B, held by C. This court held that there was no taxable transfer of the dividend stock to C by A's stockholders. 100 F.2d p. 74.

The second issue in the McLaughlin case was: B subsequently sold some original stock, but offered to A's stockholders only the beneficial interest in such stock. Such stock was actually transferred to C, and A's stockholders received additional stock in A which contained the indorsement that the holder of such stock also owned a beneficial interest in stock in B held by C. Since A's stockholders bought nothing but the beneficial interest in the stock in B, it was held that there was no taxable transfer of the stock in B by A's stockholders to C. 100 F.2d pages 75–77.

The third issue in the McLaughlin case was: B also issued some of its original stock to C to be held by C in trust for B. Since B retained, and did not convey to anyone, the equitable title to such stock, there could be only one taxable transfer, i. e. of the legal title by B to C, and this court so held. 100 F.2d pages 77, 78.

The fourth issue in the McLaughlin case was: B agreed with D to transfer stock in B to D in exchange for a transfer of stock in D to B. B, however, did not transfer its stock to D, but transferred it to C, and D received only a beneficial or equitable interest in the stock in B. Since D by the agreement obtained the right to receive the legal title to the stock in B, it was held that there was a taxable transfer of the legal title from D to C. 100 F.2d page 78. Thus the issue was identical to the cases regarding transfer of legal title previously discussed.

The McLaughlin case, admittedly is contrary to the earlier ruling of the department in XII-1 Cum.Bull., p. 430 (1933). It was there held that although A was offered, and bought, only the beneficial interest in stock in B, there was a taxable transfer of the legal title to the stock in B by A to C, the holder of the legal title. We think that ruling is based on an arbitrary distortion of the facts. To say that one, who can and does, buy only an equitable title, actually buys the entire title, is to distort what occurred. We believe the McLaughlin case, on the issues mentioned, was properly decided. It is supported by reason and is the only logical conclusion.

Subsequent to the McLaughlin case, Maloney v. Portland Associates, 9 Cir., 109 F.2d 124, was decided. Following the McLaughlin decision, it was held that where A purchases only a beneficial interest in stock in B, the legal title to which is held by C as trustee, there was no taxable transfer of the legal title by A to C. Since A could not and did not purchase or receive or obtain the right to receive the legal title to the stock in B, A could not have transferred such legal title to C. To the same effect is White v. Consolidated Equities, 1 Cir., 78 F.2d 435.

■ One further point should be discussed in this connection. If A, who owns

---

[12] XV-1 Cum.Bull., p. 414 (1936).

[13] Regulations 40 (Rev.), also the 1922 and 1924 editions, Art. 12(c); Regulations 71, also the 1929 edition, Art. 34 (c); Regulations 71, 1932 edition, Art. 34(b).

stock in B, transfers such stock to C in trust for D, under the principles above stated, the transfer of the "equitable" title to the stock from A to D is not a taxable transfer. If D should transfer his interest to E, such transfer would be no more taxable than the transfer from A to D, since it would be a transfer of the equitable interest only. In such case, if, under the trust declaration, D, at the end of a specified period, would be entitled to receive the "legal" title to the stock (in other words, the corpus), whether A has transferred to D a right to receive the legal title to stock, is a more difficult question and one which we need not decide.

Voting trusts are common. When one is created, A, who owns stock in B, transfers such stock to C, the voting trustee, who then issues a certificate showing that the holder thereof is the owner of a beneficial interest in the stock of B held by C as trustee. The issuance of such a certificate is not a taxable transfer. Reg. 71, Art. 29(e). These certificates showing ownership of a beneficial interest in stock in B are freely transferred. The regulations have uniformly taxed the transfer of such certificates.[14] Such a tax has also been upheld in the McLaughlin case, supra, 100 F.2d pp. 78, 79, and in United States v. Baker, 1 Cir., 115 F.2d 129.

Since such certificates, we assume, represent only the equitable title to the stock held in trust, it would seem, at first glance, that there is an inconsistency. However, we believe the transfer of such certificates is taxable under an exception to the general rule, declared by the act itself, that the transfer of an equitable interest is not taxable. By definition, transfers of shares or stock in any "association" are placed on the same footing as transfers of shares or stock in any "corporation." A voting trust bears all the ear-marks of an "association" as described in Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263. The voting trust certificates represent shares in such association, and the transfer thereof is taxable because it is the equivalent of a transfer of legal title to stock in a corporation, although actually the shares represent only an equitable interest.

We conclude that the transfer of an equitable title to, or interest in stock, is not a taxable transfer, except where the interest transferred amounts to a share in an "association", in which event, a tax accrues. If to some, the distinction between an equitable and legal title seems to be a technical refinement, it is sufficient to say that Congress has specifically made the distinction, and to remove it requires legislation, not by the courts, but by Congress.

Application of these principles to the instant case results in the conclusion that there were only two taxable transactions. Upon execution of the document approving the plan, each of the bondholders, in effect, became entitled to receive the legal title to taxpayer's stock, and by the same document transferred such right to voting trustees. There was a tax due on the original issue to the bondholders which was paid. There was a tax due on the transfer of the legal title to the stock by the bondholders to the voting trustees. Since the bondholders had not transferred to the voting trustees the equitable title to the stock, but had retained it, the voting trust certificates were in the nature of receipts evidencing the fact that the voting trustees held legal title to the stock in trust for the owner of such certificate. As stated above, the issuance of such certificate was not taxable. Appellant was therefore entitled to recover the amount of tax assessed and paid for one transfer.

Appellant contends that the bondholders at no time had the "right to receive" taxpayer's stock. However, examination of the documents in the record clearly discloses than the plan of reorganization contemplated that the bondholders should surrender their bonds for stock to be received by voting trustees who were to issue the voting trust certificates. The "short-cut" consisting of a transfer directly to the voting trustees was used, rather than the longer method of having the stock issued to the bondholders and then transferred to the voting trustees. However, the essentials of the transaction are unchanged. The bondholders surrendered their bonds, through the committee as their agent, and were therefore entitled to receive the stock.

---

[14] Regulations 40 (Rev.), also the 1922 and 1924 editions, Art. 12(d); Regulations 71, also the 1929 edition, Art. 34 (d); Regulations 71 (1932 edition), Art. 34(c).

This result is not contrary to McLaughlin v. Coos Bay Lumber Co., 9 Cir., 80 F. 2d 763. In that case, bondholders of a corporation transferred what amounted to the entire title to their bonds, to a committee, not in pursuance of a plan to exchange the bonds for stock because no plan had then been proposed. A year and a half later a plan of reorganization was adopted by the committee by which the bonds were to be surrendered for stock which was to be held by trustees. We held that there was no transfer of a right to receive stock by the bondholders to the voting trustees, because such right was vested in the owners of the legal title to the bonds who were the members of the committee. The transaction was the equivalent of a transfer of the entire title to bonds to one who then entered into the plan of reorganization. Whether the committee made a transfer of the right to receive the stock to the voting trustees, is a question which was not presented in that case.

The judgment is reversed and the cause is remanded to the trial court with directions to enter judgment for appellant in accordance with the views herein expressed.

HEALY, Circuit Judge (concurring).

I agree that the deed conveying the property from Marshall Square to the taxpayer was subject to the tax assessed by the Commissioner and upheld by the trial court. The assessment falls within the plain terms both of the statute and the regulation quoted in the main opinion. The consideration paid for the conveyance was the full value of the property, since no encumbrance remained thereon upon consummation of the sale.

The remaining problem before us is a simple one and depends for its solution upon the application of the statute to the distinctive facts of the case. I think the problem is not clarified by the extended analysis of the prior decisions of this court, which in turn were decided, whether rightly or wrongly, on their own peculiar facts.

The decision below was that the reorganization plan involved two taxable transfers of rights to receive stock, namely, (1) a transfer by Marshall Square to the bondholders of the right to receive 159,-520 shares in the new company, and (2) a transfer by the bondholders to the voting trustees of the bondholders' right to receive such shares. On the appeal the Commissioner undertook to support the trial court's conclusion, while the appellant contends that there were no taxable transfers. The question before us is whether one or the other, or both, of the alleged transfers were involved in the transaction. No other or different transfers are contended for.

The bondholders, by the release of their lien on the property, supplied the consideration for the stock in the new company to which they were entitled under the plan. In agreeing that the stock be issued to voting trustees rather than to themselves they transferred to the trustees the right to receive the stock; and that transfer was properly held taxable. As said in Raybestos-Manhattan, Inc., v. United States, 296 U.S. 60, 64, 56 S.Ct. 63, 65, 80 L.Ed. 44, 102 A.L.R. 111, "the power to command the disposition of the shares included the right to receive them and the exercise of the power which transferred the right is subject to the tax."

There is, however, no fair basis for assuming a transfer from Marshall Square to the bondholders. The trial court found that the 159,520 shares were delivered to the voting trustees "in consideration of" the release of the trust indenture; and that the 12,934 shares issued to Marshall Square were delivered to that company "in consideration of" its conveyance to the taxpayer of "all its right, title, and interest in and to the property." The finding is supported by the terms of the reorganization plan and is clearly correct. In no real or substantial sense did Marshall Square ever have the right to receive any stock other than the shares actually issued to it. The conclusion reached below, namely, that Marshall Square "was entitled to receive all of the stock of the new owner in consideration of the conveyance of the property" simply does not follow from the facts found. The conclusion ignores the realities of the case. As the situation would be understood by the man in the street, all Marshall Square had to sell was a very thin equity, if any. Marshall Square received and retained all the rights in the new company to which it was ever entitled. It transferred no right to the bondholders.

To effect its purpose as a revenue measure the statute ought to be given ample

scope; but it should not be stretched to cover cases in which no transfer is fairly to be spelled out.